STEPHEN M. WHITNEY *et al. versus* MARY GODDARD, Administratrix, &c.

A citizen of another State, who has never been in this Commonwealth, is not a person " beyond sea, without any of the United States," and therefore is not within the saving clause in the statute of limitations, *St.* 1786, *c.* 52, § 4. [See Revised Stat. *c.* 120, § 6.]

THIS was assumpsit against the defendant, as administratrix of William Goddard, for goods sold in New York by the plaintiffs, for the use of the ship Mount Vernon, of which the intestate was the general owner. The cause of action, as alleged by the plaintiff, accrued on May 25, 1829 ; and the action was instituted on May 24, 1837.

The trial was before *Dewey* J.

The plaintiffs, at the time when the alleged contract was made, resided in the city of New York ; and it did not appear, that they, or either of them, had been in this Commonwealth since that time. The intestate, at the time of the

making of the contract, was a resident of Boston, and always continued to reside there until his death, which took place on July 26, 1835.

It appeared, that the plaintiffs, after the sale of the goods, instituted a suit against the intestate in New York, which was pending at the time of his death, and was abated thereby.

The judge ruled, for the purposes of the trial, that the statute of limitations was a sufficient defence to the action. Whereupon, by consent, the case was taken from the jury, and the plaintiffs became nonsuit, the question of law being reserved for the consideration of the whole Court. If the Court should be of opinion, that the statute of limitations was not a good defence, the nonsuit was to be set aside, and a new trial granted.

The case was argued in writing.

*Brigham*, for the plaintiffs. The decision of this question depends upon the construction of the *St.* 1786, *c. 52.* It is admitted, that the plaintiffs have lost their remedy, unless they come within the exceptions in the 4th section of that statute, providing that it shall not " bar any infant, feme covert, person imprisoned, or beyond sea, without any of the United States, or *non compos mentis*," until six years after such impediment shall be removed. The plaintiffs contend that they were " beyond sea," within the meaning of the statute.

It has been settled in several cases, that this provision applies as well to foreigners and persons who have never been within the State, as to our own citizens who have been absent. *White* v. *Bailey*, 3 Mass. R. 273 ; *Hall* v. *Little*, 14 Mass R. 203 ; *Strithorst* v. *Græme*, 3 Wilson, 145 ; *Wilson* v. *Appleton*, 17 Mass. R. 181.

The question then resolves itself into this, whether the exception extends to citizens of other States of the Union, in regard to contracts made in those States, as well as to foreigners ? All the reasons for such exception, apply with as much force in one case as in the other. Foreigners and citizens of other States are all beyond the jurisdiction of the State, and, so far as relates to a remedy, are under a like disability. If any difference is made between them, comity to our sister States would seem to give their citizens a preference. So far

Whitney
v.
Goddard.

as relates to the statute of limitations each of the other States of the Union is a foreign nation to us. A citizen of Missouri has no greater rights in our courts, than an English subject; both must come here to obtain them. *Pearsall* v. *Dwight*, 2 Mass. R. 84; *Byrne* v. *Crowninshield*, 17 Mass. R. 55; *Bulger* v. *Roche*, 11 Pick. 39; Angell on Limitations, 219; *Faw* v. *Roberdeau's Executors*, 3 Cranch, 177; *Murray* v. *Baker*, 3 Wheaton, 545; *Forbes* v. *Foot*, 2 M'Cord, 333; *Sleght* v. *Kane*, 1 Johns. Cas. 76; *Pancoast* v. *Addison*, 1 Har. & Johns. 350; *Chomqua* v. *Mason*, 1 Gallis. 342.

The statute, being in some respects a restriction of the natural rights of the citizen, must be construed strictly. The words, " person imprisoned, or beyond sea, without any of the United States," imply incapacity to sue, arising from three distinct causes, to wit, imprisonment, being beyond sea, or, as we say, being out of the Commonwealth, and being without any of the United States. If a person is out of the Commonwealth or without any of the United States, his rights are preserved. But it will be said, that if this be the true construction, then the words, " without any of the United States," are surplusage. But it may be answered, that if the construction contended for by the defendant, be the true one, then the words, "beyond sea," are surplusage.

The words "beyond sea," must have, in our statute, a technical meaning, and are synonymous with the words, " beyond the realm," which were originally used in the English statute, but after the union of England and Scotland were superseded by the words, " beyond sea." There they have a literal signification. In this country these words are used in the statutes of limitations of most of the States, but in all cases with a technical meaning. If they have not a technical meaning, and are to be coupled with the words, " without the United States," then in order to receive the benefit of this provision of the statute, a person must have been not merely out of the limits of the United States, but beyond the water or sea also.

*Hubbard* and *Watts*, for the defendant, cited 5 American Jurist, 67; *Ward* v. *Hallam*, 2 Dallas, 217; *S. C.* 1 Yeates, 329; *Thurston* v. *Dawes*, 9 Serg. & R. 288; *Earle* v. *Dick*

*son*, 1 Devereux, 16 ; *King* v. *Walker*, 1 W. Bl. 286 ; Re-     Whitney
vised Stat. *c.* 120, § 6 ; Report of the Commissioners, ap-       *v.*
pointed to revise the statutes, *c.* 120, § 6, and notes.          Goddard.

SHAW C. J. delivered the opinion of the Court.    It is    *June 25th.*
somewhat remarkable, that this precise question has not before
been brought under the consideration of the Court, especially
as it is one, which would be likely to be of frequent occur-
rence.    The precise question is, whether a citizen of another
of the United States, who has never been within the limits of
this State, is barred of his action, in six years from the time
the cause of action accrued, by the statute of limitations, *St.*
1786, *c.* 52.    It depends upon the construction of the statute,
and upon the point, whether a citizen of another of the Uni-
ted States is within the statute, or within the exception.    The
exception and saving provision, is thus expressed, § 4.    " This
act shall not be understood to bar any infant, feme covert, per-
son imprisoned, or beyond sea, without any of the United
States, or *non compos mentis*," &c.    Upon the construction
of this statute, the Court are of opinion, that the plaintiffs,
being citizens and inhabitants of the State of New York, are
not persons beyond sea without any of the United States, and
therefore that they are not within the saving clause of the
statute, and therefore by its general provisions, they are
barred from maintaining this action.

Several cases have been cited from other States, in which
it has been held that the words " beyond seas " have been
construed to mean, beyond the limits of the State, passing the
act.    These cases we do not deem applicable to the present,
because the words of the statutes construed, are different from
ours, in using the words " beyond seas " alone and without
explanation.    We think it quite apparent, why a construction
so widely different from the ordinary and literal meaning of the
words " beyond seas " should have prevailed and been deem-
ed reasonable.    Prior to the Revolution, several of the North
American provinces and colonies had adopted and reënacted
the statute 21 *Jac.* 1, being the statute for the limitation of
personal actions.    In reënacting the acts of parliament, for the
benefit of the colonies, there was a natural and strong tenden-
cy to follow as nearly as possible, their precise language, as

Whitney
*v.*
Goddard.

well from a natural deference which was felt for acts of Brit ish legislation, designed and intended as an amelioration of the common law, affecting civil rights and the administration of justice, as from the more important and practical consideration, that such statutes, if of considerably long standing, came to us recommended by a long course of sound and wise judicial expositions, explaining doubts, reconciling apparent contradictions, removing ambiguities, and thus fitting them for a better practical application to use, in regulating the rights and remedies affected by them. This latter advantage could only be attained by following the language as well as the spirit of such acts of parliament. The effect of this tendency was, many times, to follow the language of English legislation, where from the difference in the circumstances of the two countries, such language was singularly inapplicable. This accounts for the use of the clause " beyond seas," in the acts of many of the States. In Great Britain, after the union with Scotland, when this language was introduced, it had an apt and precise signification, being co-extensive with the realm, that is, with the jurisdiction of the parliament which adopted it. There was therefore good ground for courts of the colonies and States who had thus adopted the language of 21 *Jac.* 1, to hold the words " beyond sea " to be equivalent to the phrase " out of the State ; " because such was its legal effect and construction, in the original act. It has been stated that the statute of Virginia adds the words, " without the limits of the commonwealth," to the words " beyond sea," to make it more explicit. *Shelby* v. *Guy*, 11 Wheat. 368.

But in our statute, the words " beyond sea " do not stand alone, they are immediately followed by the words " without any of the United States." We are of opinion, that in the use of these words the legislature did not intend to point out two distinct disabilities, that of being beyond sea, as one, and that of being without any of the United States, as another, using the former in a technical sense as equivalent to " out of the Commonwealth," because it would render the words " without the United States " not only superfluous but repugnant. It may then be asked, why the words " beyond sea " are used at all, being wholly superfluous, upon the construction which the Court now adopt.

It may be remarked in passing, that in the Revised Statutes, these words are not retained, the words are simply "absent from the Commonwealth." Rev. Stat. *c.* 120, § 6. But we think an answer may be given to the question, why this clause was inserted. The act of 1786 was not an original act of legislation. It was, like most of the statutes of that period, a revision of several provincial acts. It seems to have been the practice of legislators, soon after the adoption of the constitution of 1780, in the revision of colonial and provincial laws, to retain the form and phraseology of former acts as far as practicable. Probably this was done for the reason already given, that these acts had received judicial constructions, many titles and rights depending upon them, and these would be more stable and secure, if the form and language of former laws should be retained, where it was not intended to change the substance.

It is a matter of doubt, whether the several laws for the limitations of personal actions passed by the provincial government, ever went into operation. They were altered, modified and suspended from time to time, till after the commencement of the Revolution. But whether they actually went into operation or not, is immaterial ; they stood on the provincial statute book, and would be naturally resorted to, as other similar provincial acts were resorted to, upon a revision of the statutes, after the adoption of the constitution.

The first provincial act, was that of 13 *Geo.* 2. (Anc. Charters, 521.) The saving proviso, in that act, is almost precisely in the same terms with the statute of 1786, except that the words " beyond the seas " are alone used. This act is stated in a subsequent one, to be in a great measure copied from 21 *Jac.* 1, and 22 *Geo.* 2. (Anc. Charters, 566.) This latter act contains the same proviso, not to bar any person " beyond the seas." Thus stood the provincial acts, when the statute of 1786, which, in its phraseology, is manifestly a revision of the former acts, was passed. The saving clause or exception is the same, except that immediately after the words " beyond sea," are added the words " without any of the United States." The latter words are put by way of explanation and qualification of the preceding, equivalent to

saying, that by these words, "beyond sea," we mean without the United States. The former phrase was probably used, because it was found in the previous acts ; and the latter was added to remove the doubt and ambiguity which attended it as it stood alone.

There seems also to have been good reason why the citizens of other States should, in this respect, be put upon the same footing with those of our own State. The constitution of the United States, adopted about the time that this act went into operation, recognised the citizens of all the United States as constituting, for many purposes, one people, and it provides, that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States. The citizens of other States, therefore, have all the same means and facilities for securing and recovering their debts as citizens of the Commonwealth, and that not merely as a matter of comity, but of right. There seems to be equal reason, therefore, why they should conform to the general policy of the law, and be required to commence their suits within the times limited by its provisions.

A case was cited in which, it was supposed, that a contrary opinion had been expressed. *Bulger* v. *Roche*, 11 Pick. 36. In that case, no question upon this point was involved, because both parties were foreigners and British subjects. One or two expressions, however, in the opinion of that case, given by myself, countenance the idea, that by the construction of our statute, the terms " beyond sea," and " out of the Commonwealth," were used as synonymous, and that an inhabitant of another State would not be barred. The sentence alluded to is this ; " this proviso in terms excludes the operation of the statute in all cases where the plaintiff is out of the Commonwealth at the time the cause of action accrues, without distinguishing," &c. The object of the sentence was to show, that there was no distinction between a foreigner, a Chinese or Englishman, for instance, and a former citizen who had gone abroad. It meant to say, that the *terms* or *words* of the statute applied as fully to the one as the other ; to those who were. in fact absent, beyond sea, &c. whatever these expressions imported, and not merely to those who had gone be

yond sea, or were described by any other expression, imply-
ing a former presence or domicil. There was no occasion to
mark the distinction on which this case turns. Had the words
of the statute been used, " beyond sea without any of the United
States," which would have been more exact, the mistake
would not have occurred ; and the result upon the point then
under consideration, would have been precisely the same. A
subsequent expression in the same opinion, that the remedy
would not be barred until six years. after both plaintiff and
defendant had been within the jurisdiction of the Common-
wealth, must be accounted for in the same way, by haste and
inadvertence. The proposition was substantially correct as
applied to that case. Both plaintiff and defendant were for-
eigners, never having been citizens of any other of the United
States. The proposition intended to be expressed was, that
the statute of limitations would not be a bar in such case, until
the defendant had been within the State and liable to be sued,
for the term of six years, and the plaintiff had been six years
freed from the impediment, as it was contemplated in the stat
ute, of being beyond sea, &c., which liberation, in that case,
commenced at the same time that the plaintiff came into this
Commonwealth. It was therefore correct as applied to that
state of facts, that the plaintiff would not be barred, until he
had been six years within the jurisdiction of the Common
wealth. This case therefore affords no authority for the
ground taken by the plaintiffs ; and the Court are of opinion,
that the plaintiffs, being citizens of the State of New York,
are not within the exception, and that they are barred of their
action by the statute of limitations.